355 So.2d 231 (1977)
STATE of Louisiana
v.
Randolph Wayne SCOTT.
No. 60011.
Supreme Court of Louisiana.
December 19, 1977.
Rehearings Denied March 3, 1978.
*232 Scotty G. Rozas, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Gregory D. Lyons, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant Randolph Wayne Scott was convicted by a jury of manslaughter, La. R.S. 14:31, and sentenced to fourteen years in the custody of the Department of Corrections. Defendant appeals his conviction, relying upon thirteen assignments of error.[1]
The victim, Anne Melancon, was found dead in her apartment at about 4:00 a. m. on October 16, 1975. Curtis Richards, the neighbor who discovered the body, ran to defendant Scott's apartment in the same complex and told him that something was wrong with Anne. The two men, along with Scott's wife Loretta, returned to the victim's apartment. The defendant picked up Anne Melancon's four-year old child, who was asleep on the dead woman's lap, and handed him to Loretta Scott, instructing her to call the police. The child remained with the Scott family for two days until the victim's family could be located out of state.
Richards and Scott waited for the arrival of the police, and Scott subsequently gave the police a statement. In this statement, which was exculpatory in nature, Scott admitted having gone to the victim's apartment, but he said he went there only to borrow some baking ingredients earlier in the evening. At the time of making his initial statement, defendant agreed to return to police headquarters at a later time to take a polygraph test.
Investigation of the killing by the police turned up no physical evidence which pointed to any individual as the perpetrator, but testimony adduced at the motion to suppress indicated that two deputies informed the investigating officers that they had seen the defendant or someone fitting his description leaving the victim's apartment on the night of the killing. Neither of the deputies testified at the motion to suppress hearing or at the trial. The second-hand recitations of their report by other officers leaves unclear the exact time the person left the apartment, the physical arrangement of the apartment in the complex, whether the person could have been leaving another apartment in the same building, and whether the deputies positively identified the defendant. The record does not explain why the two deputies did not testify or why the arresting officers did not act on the deputies' information sooner. Although the police were aware of the deputies' statement on the morning of the murder, no further action was taken until the defendant failed to appear at the police station to take a previously scheduled lie detector test nearly two days after the crime. In the interim, Curtis Richards and his brother, both initially considered suspects in the case, had been cleared in the opinion of the police. Again, however, the record does not disclose the reasons for the *233 removal of their names from the list of possible culprits.
When the defendant failed to appear at the police department for his polygraph test on October 18, the investigating officers began a search to ascertain his whereabouts. In the course of their investigation, they learned from the defendant's wife that she was going to leave him and that he was no longer staying in his apartment, from his employer that his job with a life insurance company had been terminated, and, from other sources, that his car had apparently been abandoned in the parking lot of a J. C. Penney's store. By questioning the personnel at Penney's, where defendant had worked nights as a maintenance man, the deputies learned that defendant had been seen in the company of one Calvin Pitre, a Penney's employee. The officers contacted Pitre, learned that defendant was staying in his apartment, and, with Pitre's permission, proceeded to his apartment and arrested the defendant on October 19, 1975, at about 9:00 p. m.
On the night of his arrest, after being advised of his rights, defendant was questioned from about 10:00 p. m. until 1:30 a. m. the next morning by Officers Landry and Smith at the Lake Charles City Police Department. At first, defendant gave statements exculpating himself; later, however, he confessed to the killing. Although a written statement was partially prepared on the 19th, it was not finished; no written statement was signed at that time. At 1:30 a. m., the interview was terminated by the officers and defendant was taken back to jail.
At 7:30 a. m. the next morning, October 20, the defendant was questioned again, this time by Officers Landry and LeJeune. After being given his rights, he gave a written statement in narrative form which implicated him in the murder. After the preparation and signing of the statement, defendant was taken by Officer Landry to see Dr. Cook, the coroner, for treatment of a headache.
ASSIGNMENT OF ERROR NO. 4
Defendant contends that the arresting officers lacked probable cause to arrest him for the charged offense, and that the State failed to prove that a subsequently obtained confession was voluntary and admissible.
Voluntariness of the Confession
The voluntariness of the confession is a threshold requirement of admissibility. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The defendant contends that the trial judge should have suppressed the confession that he gave to the police, arguing that the statement was not given freely and voluntarily. Defendant, who testified that he was suffering from a severe headache, asserts that his physical condition and his depressed mental state so affected his comprehension that he was unable to give a wholly voluntary statement. Further, defendant argues that he signed the statement only upon a promise by the police that he would then be taken to a doctor for treatment of his headache.
Before a confession may be introduced into evidence, the State must establish beyond a reasonable doubt that the inculpatory statement was freely and voluntarily made. La.C.Cr.P. art. 703(C); La. R.S. 15:541; State v. Glover, 343 So.2d 118 (La.1977). See also, State v. Cobbs, 350 So.2d 168 (La.1977); State v. Scott, 344 So.2d 1002 (La.1977); State v. McSpaddin, 341 So.2d 868 (La.1977). The admissibility of the confession is a matter for determination by the trial judge, and his conclusions as to the credibility of witnesses testifying as to voluntariness will not be disturbed unless unsupported by the evidence. State v. Cobbs, supra; State v. Schamburge, 344 So.2d 997 (La.1977); State v. Ross, 343 So.2d 722 (La.1977); State v. Hollingsworth, 337 So.2d 461 (La.1976).
In the instant case, the defendant's testimony at the hearing on the motion to suppress was directly contradicted by the testimony of the police officers conducting the investigation. The officers stated that, *234 while the defendant did complain of a headache, he was alert and able to understand the questions put to him. Further, the officers testified that no inducements, promises, or threats were made to the defendant before he signed the inculpatory statement. In fact, they asserted that defendant's rights were explained to him on at least three separate occasions, and that they volunteered to take the defendant to a doctor at the close of the questioning.
Further, we find that the trial court did not err in considering inconclusive the expert testimony presented on behalf of the defendant. At best, the experts were able to state that the defendant's mental condition might have somehow affected the voluntariness of the confession. For example, the coroner, Dr. Cook, testified that the defendant had a serious psychological problem related to his sexual orientation and maturity which, together with his state of mental depression, could have caused him to confess to a crime he did not commit. However, none of the medical testimony directly and unequivocally indicated more than a possibility that the defendant's mental state had precluded him from freely and voluntarily confessing to the crime. Our review of the entire record presented to us on appeal supports the finding of the trial judge that the State met its burden of proving that the statement was freely and voluntarily made.
Probable Cause and Attenuation
In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court held that a confession obtained as a direct result of an arrest made without probable cause should be suppressed. When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, "the burden of showing admissibility rests . . . on the prosecution." Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This affirmative showing must be made by establishing that probable cause existed to arrest the defendant or, if the arrest was unlawful, by showing that the causal connection between it and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. Wong Sun v. United States, supra. See, State v. Jenkins, 340 So.2d 157 (La.1976).
Any lawful arrest, whether warrantless or pursuant to an arrest warrant, must be based upon probable cause to believe that the person arrested has committed or is committing an offense. State v. Herbert, 351 So.2d 434 (La.1977); State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976). Although the measure of probable cause does not require that the arresting officer have sufficient proof to convict the accused, the arrest may not be predicated upon mere suspicion. State v. Randolph, 337 So.2d 498 (La.1976).
In State v. Thomas, 349 So.2d 270, 272 (La.1977), we set forth the applicable principles:
"A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. [citations omitted] Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. [citations omitted] While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. [citations omitted]
"LaFave, `Street Encounters' and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40, 73-74 (1968) observes:
"`As to the probability required for an arrest, it may generally be stated that it must be more probable than not that the person has committed an offense, although this is less certain as to the probability that a particular person is the offender than to the probability that a crime has been committed by someone.

*235 In the latter situation, which assumes central importance when there is no doubt who the offender is if a crime has been committed, courts ordinarily require that criminal conduct be more probable than non-criminal activity. This approach is reflected in those decisions which say that there must be "more evidence for [the existence of criminal conduct] than against" or that the suspect's actions must be "inconsistent with any innocent pursuit," and also in the many cases where grounds for arrest have been found lacking because the conduct of the suspect was equivocal, that is, where the possibility of criminal conduct was no greater than the possibility of innocent behavior.'" (Footnotes omitted.)
In discussing the factors to be considered in determining when the connexity becomes so attenuated that suppression of a confession resulting from an unlawful arrest is not required, the United States Supreme Court, in Brown v. Illinois, stated:
"It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited. See Westover v. United States, 384 U.S. 436, 496-497, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
"While we therefore reject the per se rule which the Illinois courts appear to have accepted, we also decline to adopt any alternative per se or `but for' rule. The petitioner himself professes not to demand so much. Tr. of Oral Arg. 12, 45, 47. The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * *" Brown v. Illinois, supra, 422 U.S. at 427, 95 S.Ct. at 2261.
In the instant case, we are unable to conclude from the record before us that the State carried its burden of establishing the admissibility of the defendant's confession by either showing that probable cause existed to arrest the defendant or that the causal connection between an unlawful arrest and a subsequent confession had been broken for Fourth Amendment purposes. We have reached this conclusion primarily as a result of the ambiguous testimony of the arresting officers about what was actually seen and reported by the two deputies regarding the person they saw in the vicinity of the victim's apartment on the night of the killing. In our view, the ambivalent quality of this evidence, together with the fact that the State did not call the two deputies to testify, either at the motion to suppress hearing or at the trial, resulted in a failure of the State to establish satisfactorily that the officers had probable cause to arrest the defendant. The failure of the defendant to appear for his polygraph test and the other circumstances caused by the termination of his employment and the breakup of his marriage combined with the ambiguous secondhand recitation of the deputies' report does not establish a probability that the defendant committed the offense. The facts as set forth in the record may have warranted suspicion and further investigation, but they do not establish probable cause to arrest the defendant for the killing.
*236 Turning to the question of whether there was a sufficient break in causality between arrest and confession to purge the latter of any taint, initially we find that defendant was given his Miranda rights on more than one occasion before making an inculpatory statement. While the Court in Brown rejected the Miranda warning as a "talismanic test" for determining attenuation, it nevertheless acknowledged that the presence or absence of such a warning is an important factor to be considered. Further, we find that the "temporal proximity of the arrest and the confession" in the instant case is fairly close. Defendant was interrogated on one evening and the next morning, and his confession was obtained at the end of the morning session. The testimony introduced on the motion to suppress does not indicate the presence of any significant intervening circumstances between defendant's arrest and his confession. However, we are unable from the record before us to determine whether "official misconduct" occurred, or, if it occurred, the "purpose and flagrancy" of the misconduct. Brown v. Illinois, supra,§ 422 U.S. at 603-4, 95 S.Ct. 2254.
This issue is, of course, related to the probable cause question. As with probable cause, the lack of a clear and complete record of the pertinent evidence thwarts our inquiry. The United States Supreme Court has indicated that a confession resulting from an invalid arrest may nevertheless be admissible if the illegality did not have a quality of "purposefulness." Brown v. Illinois, supra, 422 U.S. at 605, 95 S.Ct. 2254. Particularly disturbing in this regard is the fact that the two deputies who purportedly saw defendant or someone resembling him leaving the victim's apartment were never called to testify at either the motion to suppress hearing or at trial. Further, the arresting officers were aware of the deputies' report for almost three days before the defendant was arrested, but failed to act until defendant absented himself from his home and office, an occurrence which seems readily explained by the termination of his employment and the breakup of his marriage. The officers had been given these reasons for defendant's unusual behavior before the arrest and easily could have verified the facts before interrogating him. If the record had made clear the exact nature of the information provided by the deputies, and given more explanation of the actions of the arresting officers in eliminating the other suspects and delaying before focusing their investigation on defendant, perhaps it would have been sufficient to dispel the aura of "purposefulness". As it stands now, however, the record supports the conclusion that defendant was simply picked up for questioning as well as it does that a good faith but negligently invalid arrest was made.
On this record, we cannot conclude that the State met the requirement that it prove either probable cause for the defendant's arrest or a break in causal connexity between the arrest and the confession. Rather than decide those matters for the first time at this level, we think it preferable to allow the trial court to reconsider the issues under the guidelines expressed herein.
ASSIGNMENT OF ERROR NO. 5
In this assignment, defendant contends that the trial judge erred in accepting the determination of voluntariness made at the motion to suppress. Defendant argues that, in the face of new evidence presented at trial on his behalf, the court should have re-opened the inquiry as to whether defendant's statement was voluntarily made, rather than simply allowing the new evidence to go to the jury to aid in its determination of the weight to be given to the confession.
Our review of the testimony presented by the defendant at trial indicates that no evidence was adduced which would have altered the initial determination of voluntariness made at the motion to suppress. The expert medical testimony was essentially corroborative of the medical evidence presented at the hearing on the motion; the witnesses indicated that defendant was a self-defeating personality type who suffered from periods of severe depression, but none of the witnesses was able to say that there was more than a possibility that defendant's *237 mental state had deprived him of the ability to make a voluntary statement. The factual testimony presented by defendant's other witnesses also presented basically the same issues already raised at the initial hearing; no testimony was presented which would have justified a change in the original determination that the confession was freely and voluntarily made.
Because of our finding that the evidence adduced at trial was insufficient to reverse the original finding of voluntariness, we find it unnecessary to reach the issue of whether the trial judge should in fact have re-opened the inquiry which had been resolved by the determination at the hearing on the motion to suppress. After considering all evidence presented by defendant on his behalf, we conclude that the trial court did not err in ruling that defendant's confession was made freely, voluntarily, and without coercion.
Defendant's fifth assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
Defendant complains that he was not given the warnings required by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prior to his giving a statement which implicated him in the murder of Anne Melancon. This contention is based upon the fact that the "Miranda rights" printed at the top of the confession signed by defendant do not include the right to appointed counsel during interrogation. Because the written enumeration of rights was insufficient, defendant contends that the confession which he subsequently gave was obtained in violation of his constitutional rights.
Defendant's argument relating to the instant assignment is without merit. A review of the trial testimony indicates that defendant was orally advised at least once, and possibly twice, of the full range of rights accorded to him under Miranda. Under the circumstances of this case, the fact that the subsequent written waiver was incomplete and does not state one of the entire panoply of rights does not, in view of the full oral warnings, invalidate the confession. Defendant's sixth assignment is unmeritorious.
Since we find no trial error except that on the motion to suppress, it is not necessary at this time to reverse the conviction or order a new trial, because the error might be eliminated upon another trial of the motion to suppress or the conduct of such other factual inquiries as may be necessary to resolve the admissibility issue. See, State v. Simmons, 328 So.2d 149 (La. 1976). We reserve to the trial judge the power to grant a new trial should he determine the confession inadmissible. If, on the other hand, the trial judge determines, after taking additional evidence that the confession is admissible, the right to appeal from such ruling is reserved to the defendant. In the absence of such an appeal, the conviction and sentence will be affirmed.
The case is remanded to the district court for further proceedings in accordance with this opinion.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
PER CURIAM.
Both applications for rehearing are denied. The State has noted an erroneous statement in our original opinion, caused by the truncated record before us, and has now supplied a transcript showing that Deputies Fruge and Allen testified in some proceeding in this case. We have examined that testimony, and it does not establish probable cause for defendant's arrest, and therefore does not affect our ruling on the remand.
The applications for rehearing are denied.
NOTES
[1] Of these, Assignment No. 1 is moot; Assignments Numbers 2 and 3 have not been briefed and are thus deemed abandoned. We have examined the record in relation to Assignments 7-13, which raise issues of the sufficiency of the notice of intent to use defendant's confession, the right of defendant to inspection of a police report not used in court, inadvertent remarks of witnesses relating to voice analyzer tests, improper cross-examination of defendant, limitation of expert testimony offered by a defense witness, and failure of the trial court to grant a new trial, and find them to be without merit.