375 So.2d 1365 (1979)
STATE of Louisiana, Appellee,
v.
Donald J. EDWARDS, Appellant.
No. 64204.
Supreme Court of Louisiana.
October 8, 1979.
*1366 Walton J. Barnes, II, Zachary, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Premila Burns Chumbley, Asst. Dist. Attys., for plaintiff-appellee.
PER CURIAM.
In our review of this conviction, we find that a substantial issue is presented by the defendant's motion to suppress his confession. One ground alleged is that the confession should be suppressed as the product of a warrantless arrest without probable cause. Dunaway v. New York, ___ U.S. ___, ___, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). See Assignments of Error Nos. 2, 3 (see also Assignments 4, 5, 6, 21, and 22).

(1)
The defendant Edwards and two alleged accomplices (Kent and Shepherd) were arrested without warrants on the basis of information furnished Lieutenant Gill, an investigating police officer. The defendant Edwards confessed within thirty minutes of the start of the interrogation. If there was no probable cause for the arrest of Edwards and his two alleged companions, a serious issue is presented as to whether, under Dunaway and Brown, the confession of Edwards should be suppressed as the product of an illegal arrest.
Lieutenant Gill testified that he arrested Edwards and his two alleged accomplices (Kent and Shepherd) on the basis of information obtained from two unidentified informants. One of the informants had previously given him information which had led to at least two arrests and convictions. The other informant had furnished Gill information only on the present occasion. The information had been received by Gill on the day previous to the arrests, and he further testified that these informants had not furnished the information which had led to the earlier arrest of three other suspects.

(2)
The serious error in the pre-trial hearing occurred when the defendant Edwards' counsel attempted to ascertain whether there was probable cause for his arrest.
As this court has held, conformably to Brown v. Illinois, cited above, a confession must be suppressed if the product of an illegal arrest made without probable cause. State v. Scott, 355 So.2d 231 (La.1977). We there reiterated, 355 So.2d 234, "A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. . . . Probable . . . cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. . . . While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest."
*1367 Thus, even if anonymous informants are shown to have furnished reliable information in the past in order to justify a detention or seizure based upon information furnished by them the state must nevertheless show that the informant's information was based on his personal observation or knowledge or sufficient factual detail so as to indicate factual reasons for probable cause for the arrest. State v. Tassin, 343 So.2d 681, 689 (La.1977) and decisions therein cited.
"Generalized underworld gossip by faceless informers does not provide a sufficient factual basis" to justify the state's invasion of the security of person and property of individuals living under Louisiana law and guaranteed by Article 1, Section 5 of our state constitution. Tassin at 343 So.2d 691. A lead or tip of this non-factual nature does not furnish probable cause for an arrest; consequently, a confession may be inadmissible if it is the immediate product (as the exploitation of) of an illegal arrest thereby resulting. Dunaway v. NewYork, ___ U.S. ___, 99 St.Ct. 2248, 60 L.Ed.2d 824 (1979).
Error in the pre-trial hearing on the motion to suppress resulted when the trial court sustained state objections to defense efforts to establish whether the informants had seen something or heard someone say it or give information as to physical evidence. The defense counsel asked: "* * * what exactly was the information that you received from your informants . . . how did they know they [the defendant and his companions] were involved? Did they hear some talk?" Tr. 148-49, transcript of motion to suppress hearing.
The defense counsel was thus attempting to ascertain the factual basis of the information received by the police officer, by reason of which he believed he had probable cause to arrest the defendant.
The state objected, on the grounds that they were getting into hearsay. However, the defense specifically stated the relevant reason for the query: "The issue is probable cause for the arrest." Tr. 149. See also Tr. 134-36.
The trial court sustained the objection. It had similarly sustained earlier objections attempting to ascertain whether there was probable cause for the arrest. Then, the trial court previously had accepted state arguments that, unlike in a search warrant situation, the basis or reliability of the information leading to the arrest is irrelevant,[1] especially if after the arrest the accused received Miranda warnings.
However, on June 5, 1979, subsequent to the trial court's rulings, the United States Supreme Court in Dunaway v. New York, cited above, specifically rejected such arguments. It there held that a confession was inadmissible under the Fourth and Fourteenth Amendments of the United States Constitution, even though received after Miranda warnings, because it resulted from the constitutionally impermissible exploitation of a warrantless arrest without probable cause (i. e., one based solely on generalized tips or leads, which did not furnish an articulated factual basis to indicate probable cause for detention of the accused as a suspect for the crime under investigation). As in the present case, in Dunaway the first incriminating statements were made within an hour of the accused's detention.
Under Dunaway, the trial court was in error in sustaining the state's objections and in depriving the accused of an opportunity to demonstrate whether his arrest was made without probable cause. See also State v. Scott, 355 So.2d 231 (La.1978) and Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which the defendant's counsel had strenuously (and correctly) *1368 urged as justifying his inquiry into the probable cause for the accused's arrest, a relevant query in the determination of whether the confession should be suppressed as the product of an illegal arrest.

(3)
The prior confession of at least one of the defendant's companions may, as the state suggests, also have furnished part of the probable cause for the defendant's arrest. However, if these arrests were likewise made without probable cause (and the companions' confessions secured shortly thereafter), at least some members of the court are of the opinion that Dunaway and Brown dictate inadmissibility not only of their own confessions but also (insofar as the defendant's arrest may have been based thereupon) of the defendant's confession immediately after his own arrest (if without probable cause), the arrest having been made within or about an hour after the confederate's confessions procured as the result of similarly illegal arrests.
In this regard, the defendant attempted to introduce in evidence a certified copy of the booking records of himself and his alleged accomplices (Shepherd and Kent) and to produce other evidence, in order to demonstrate that their arrests were also made without probable cause and that, from the times of the respective arrests, it would be impossible for the confession of Kent to have furnished probable cause for the almost contemporaneous arrest of Edwards. See Tr. 118-129, Motion to Suppress Hearing.
The state objected on grounds of relevancy. The court erroneously sustained this objection for the reasons previously decided. Also, the information was obviously relevant, as is shown by the state's argument seeking to justify the defendant Edwards' arrest as based on information acquired from Kent and Shepherd after their arrests. See footnote 1 above.

(4)
Normally, reversal is required when trial error permits a jury to be exposed to an incriminating statement by the defendant, when that statement might not be admissible, if inquiry had been permitted which was curtailed by the erroneous trial ruling. State v. McGraw, 366 So.2d 1278, 1289-90 (La.1979).
Nevertheless, when the error has occurred in a ruling during a hearing on a pre-trial motion to suppress a confession, our recent practice has been to remand the motion for a reopened hearing to admit the omitted or improperly excluded evidence. State v. Scott, 355 So.2d 231 (La.1978); State v. Hills, 354 So.2d 186 (La.1977); State v. Simmons, 328 So.2d 149 (La.1976). As we explained in Simmons, 328 So.2d 153, by this practice "the error might be eliminated upon another trial of the motion to suppress," and a new trial on the merits be avoided if in fact no error at such trial has occurred.

(5)
We find to be here appropriate this procedure of remand for a re-opened hearing on the motion to suppress. Accordingly, we remand the motion to suppress for the trial court to receive at the re-opened hearing evidence as to probable cause for the arrest of the accused, in accordance with the views expressed above, and for it to make its ruling on the motion in the light thereof and of evidence previously received, consistent with the holdings in State v. Scott, Dunaway v. New York, and Brown v. Illinois, cited above.
Because we have not completed our review of other substantial contentions raised by this appeal, we otherwise retain jurisdiction of this appeal, with the following directions: if the trial court finds that the confession should have been suppressed, it is directed to grant the defendant's motion for a new trial (and the present appeal will be mooted); if, on the other hand, the trial court reinstates its denial of the motion to suppress the confession, it is ordered to transmit to this court its ruling and the *1369 record of the re-opened hearing on the motion to suppress, in order that this court may complete its review of the issue under the assignments of error previously made and any further ones made as a result of rulings at the re-opened hearingas well as for us to complete our review of the remaining assignments of error raised by this appeal.

Decree
Accordingly, the motions to suppress the confession are remanded to the trial court for further proceedings in accordance with the views and directions expressed by this opinion. In accordance with and subject to the directions expressed by part (5) of this opinion, this court otherwise retains jurisdiction of this appeal.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by DIXON, J.
DENNIS, J., dissents and assigns reasons.
DIXON, Justice (dissenting).
I respectfully dissent from the decision of the majority to remand this matter to the trial court to patch up the evidence adduced in the trial court to support the admissibility of the confession.
Donald J. Edwards was indicted, tried and convicted of first degree murder and was sentenced to life imprisonment on October 12, 1978 after a sentencing hearing.
Seventy-eight year old Ruth McInnis Todd was murdered on January 17, 1978 in her home, supposedly by three persons who broke in at night, ransacked the house, brutally cut and stabbed her to death and fled in her car with a box of coins.
Later that night the police noted the stolen yellow Rambler, parked at an abandoned service station, occupied by three suspicious black persons. Their check into the car registration led to the discovery of the crime and the arrest of three suspects. These were later released.
The investigation into the murder continued; three other persons were arrested, interrogated and released in the following week. The homicide division sought lists of possible suspects from other officers and from the Auto Theft Bureau and the burglary divisionlists of names of "anyone living in the area who might possibly have been involved, is capable of committing such a crime . . ." Defendant's name appeared on "several" lists.
Six days after the crime the seventeen year old defendant was arrested, without a warrant, in the home of his parents, where he lived.
The day before defendant was arrested Lieutenant Gill had obtained the names of Kent, Shepherd and defendant Edwards from informants whose names were never disclosed. Gill had one telephone conversation with one informant, whom he had not previously known, and perhaps three phone conversations and a conversation in person with the other informer, who had furnished reliable information before. These two told Gill "who, when and where;" "[t]hey told me who was involved and . . ." The State interrupted, objecting to any further examination into the basis of the information. The trial judge erroneously sustained the objection.
There is no evidence of the source or reliability of the informers' report and information, except that they were neither witnesses to nor participants in the crime, nor had they been arrested for it.
When defendant was arrested, the police told his mother it was for burglary and purse snatching. Later that evening the family learned from the television news that defendant had been arrested for murder.
At 5:28 that afternoon defendant waived his rights to silence and representation. Within thirty minutes after questioning began, he made a statement which his counsel *1370 sought to suppress as the fruit of a warrantless arrest made without probable cause.
In addition to the "who, when and where" of the informers, the State argues that statements which it obtained from Kent and Shepherd also contributed to the probable cause for the arrest. It is a bootstrapping argument. The police testimony established that the three names were furnished by two informers the day before they were arrested. This was all the information the police had when they set out to arrest the trio. They went, according to Sergeant Breaux, to the high school to pick up Edwards and Shepherd. Edwards was not there, but the police found him at home. Breaux said Edwards was arrested at about 5:00 p. m. It is clear that the police made two trips to Edwards' house. The first time he was not there; the second time, he was arrested. Edwards was booked at 3:15 p. m.; defense counsel offered to introduce the booking records of Kent, but the court sustained the State's objection. Later, however, in argument, the State seemed to admit that Kent and Edwards were booked together, and at 3:15 p. m. (Records introduced at trial proved that to be true).
It is clear that Kent was questioned first, Shepherd next, and Edwards third. It is equally clear, however, that the determination to arrest all three was formed after the tip from the informers, and before any of the three had given a statement to the police. (The trial judge made no specific finding on this point, except to observe that, based on all the evidence, the State carried its "burden of proving that [the statement] was made freely and voluntary and not made under the influence of fear and duress.")
Breaux testified that Kent was "brought in for investigation." So were Edwards and Shepherd.
In Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court held that a confession obtained as a direct result of an arrest made without probable cause should be suppressed. When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, the burden of showing admissibility rests on the prosecution. State v. Scott, 355 So.2d 231 (La.1977); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This affirmative showing must be made either by establishing that probable cause existed to arrest defendant or, if the arrest was unlawful, by showing that the causal connection between arrest and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. Wong Sun v. U. S., supra; State v. Scott, supra.
Any lawful arrest, whether warrantless or pursuant to an arrest warrant, must be based on probable cause to believe that the person arrested has committed or is committing an offense. Although the measure of probable cause does not require that the arresting officers have sufficient proof to convict the accused, the arrest may not be predicated upon mere suspicion. State v. Randolph, 337 So.2d 498 (La.1976).
As noted above, the State cloaked in secrecy the means by which the informants came by their information, and failed completely to show that this knowledge "was obtained under circumstances or from sources factually indicating its veracity." State v. Wilson, 366 So.2d 1328, 1331 (La. 1978), citing State v. Richards, 357 So.2d 1128 (La.1978). This record contains no basis on which "to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information." State v. Paciera, 290 So.2d 681, 686 (La.1974). See also, State v. Wilson, supra, at 1331. And for all that appears on the record, the information was no "more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. U. S., 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 644 (1969).
*1371 As further noted above, the record does not support the State's argument that Kent's statement provided probable cause for Edwards' arrest, because the decision to arrest all three suspects was formed before either was arrested, and Kent and Edwards were booked at the same time. Nor does this record establish that the causal connection between the illegal arrest and subsequent confession became so "attenuated" that it dissipated the taint of an arrest without probable cause. In discussing the factors to be considered in determining when the connexity becomes so "attenuated" that suppression of a confession resulting from an illegal arrest is not required, the United States Supreme Court in Brown v. Illinois, supra, stated:
"It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited. See Westover v. United States, 384 U.S. 436, 496-497, 86 S.Ct. 1602, 1639, 16 L.Ed.2d 694 (1966). While we therefore reject the per se rule which the Illinois courts appear to have accepted, we also decline to adopt any alternative per se or `but for' rule. . . . The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972), and particularly, the purpose and flagrancy of the official misconduct are all relevant. See Wong Sun v. United States, 371 U.S. at 491, 83 S.Ct. at 419. . . ." 422 U.S. at 603-604, 95 S.Ct. at 2261-2262, 45 L.Ed.2d at 427.
The "temporal proximity of the arrest and the confession" of approximately two hours in defendant's case is just as close as in Brown. The testimony introduced in the motion to suppress does not indicate the presence of any significant intervening circumstances, such as an appearance before a magistrate, Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), or consultation with an attorney. The "official misconduct" for which the confession must be excluded is the arrestthe ninth of Edwards for investigation.
The record is clear in this case. The State should not be given a further opportunity to clean up the official misconduct by which this confession was obtained. The ruling of the trial court on the motion to suppress ought to be reversed, and the case ought to be remanded for a new trial.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by Mr. Justice Dixon.
There also appear to be two other errors requiring full consideration and reversal of the defendant's conviction. The transcript of the competency hearing shows that the trial judge abused his discretion in rejecting the commissioners' recommendation that defendant undergo further testing before the court should finally determine his mental capacity to proceed. The trial court also erred in refusing to quash the jury venire because of systematic exclusion of black jurors which resulted in the defendant, a black youth accused of murdering a 78-year *1372 old white woman, being tried by an all-white jury.
NOTES
[1] See Tr. 140, prosecutor's argument: "What we're talking about is tips, the police do this constantly. They get tips; they get information off the streets. It didn't stop there. They made arrests on the basis of the two other individuals and their statements which incriminated this particular defendant on the basis of all this sum total of the information." But (see part (3) of this opinion), the state objected to introduction of booking sheets introduced to show that statements of the coaccuseds could not have furnished probable cause for the defendant's arrest because of the short time sequence between the respective arrests.