389 So.2d 1285 (1980)
STATE of Louisiana
v.
Randolph Wayne SCOTT.
No. 67199.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Dist. Atty., Evelyn M. Oubre, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
James Miguez, Scotty G. Rozas, Lake Charles, for defendant-appellant.
CALOGERO, Justice.
Defendant Randolph Wayne Scott was convicted of manslaughter in violation of R.S. 14:31. Defendant appealed his conviction, relying on thirteen assignments of error. This Court found that, while all other assignments lacked merit, defendant raised a serious issue regarding the denial of his motion to suppress a confession. Finding *1286 that the state had made an inconclusive showing of either probable cause to arrest defendant or a break in the causal connection between the arrest and the confession, we remanded the case for another hearing on the motion to suppress and reserved to the defendant the right to appeal anew should the ruling be adverse to him. State v. Scott, 355 So.2d 231 (La.1977). On remand, after another hearing, the trial judge again denied the motion to suppress, ruling that there was probable cause to arrest defendant. Defendant now appeals from that ruling.
In our earlier consideration of this case, we stated:
"In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court held that a confession obtained as a direct result of an arrest made without probable cause should be suppressed. When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, `the burden of showing admissibility rests ... on the prosecution.' Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This affirmative showing must be made by establishing that probable cause existed to arrest the defendant or, if the arrest was unlawful, by showing that the causal connection between it and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. Wong Sun v. United States, supra. See, State v. Jenkins, 340 So.2d 157 (La.1976).
"Any lawful arrest, whether warrantless or pursuant to an arrest warrant, must be based upon probable cause to believe that the person arrested has committed or is committing an offense. State v. Herbert, 351 So.2d 434 (La.1977); State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976). Although the measure of probable cause does not require that the arresting officer have sufficient proof to convict the accused, the arrest may not be predicated upon mere suspicion. State v. Randolph, 337 So.2d 498 (La.1976)."
"In State v. Thomas, 349 So.2d 270, 272 (La.1977), we set forth the applicable principles:
'A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. [citations omitted] Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. [citations omitted] While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. [citations omitted]
`LaFave, "Streets Encounters" and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40, 73-74 (1968) observes:
'As to the probability required for an arrest, it may generally be stated that it must be more probable than not that the person has committed an offense, although this is less certain as to the probability that a particular person is the offender than to the probability that a crime has been committed by someone. In the latter situation, which assumes central importance when there is no doubt who the offender is if a crime has been committed, courts ordinarily require that criminal conduct be more probable than non-criminal activity. This approach is reflected in those decisions which say that there must be "more evidence for [the existence of criminal conduct] than against" or that the suspect's actions must be "inconsistent with any innocent pursuit," and also in the many cases where grounds for arrest have been found lacking because the conduct of the suspect was equivocal, that is, where the possibility of criminal conduct was no greater than the possibility of innocent behavior.' " [Footnotes omitted.] 355 So.2d at 234, 235.
*1287 In that earlier consideration this Court noted that the failure of the defendant to appear for his voice analyzer test and other circumstances caused by the termination of his employment and the breakup of his marriage did not establish a probability that defendant committed the offense. Neither did the testimony of two deputies regarding the person they saw in the vicinity of the victim's apartment on the night of the killing establish probable cause for defendant's arrest.[1]
At the second hearing on the motion to suppress, only the state introduced witnesses. Deputy Fruge testified that he had seen a man resembling defendant about 20 feet from the victim's apartment and walking away from the area at approximately the time of the crime. However, the deputy admitted that he was at least 90 feet away from the individual and that it was misting rain at the time. Further, the deputy saw only the side of the man's face as the man turned momentarily in response to the beam of a flashlight being shone on him. At trial Deputy Allen, Fruge's partner, had identified defendant as the man sighted the night of the crime. Allen incidentally did not testify at the second hearing. Thus, with the additional information that the deputies saw the man from a considerable distance and under poor conditions of visibility, the identification of defendant as the man seen at the crime scene is weaker after the remand than when we first considered this case.
The only new evidence presented during the second hearing on the admissibility of the confession was hearsay testimony by the police that they had been told that defendant was acting strangely on the night of and shortly following the murder. The first such report allegedly came from Curtis Richards who had discovered the body of the victim. Richards reportedly said that defendant was "acting strange in the apartment that morning when the body was discovered." However, we note that defendant was present when the police arrived to investigate the crime and none of the investigating officers remarked about strange behavior on the part of the defendant. During his testimony, which had taken place at the trial, Curtis Richards neither mentioned or was questioned regarding defendant's strange behavior. Richards did not testify at the hearing we are currently reviewing.
The second report upon which the police testified they had relied, that defendant was "acting weird," came from Calvin Pitre with whom defendant was staying at the time of his arrest. Pitre, like Richards, did not testify at the second hearing on the motion to suppress. His testimony at the first hearing and during trial was that defendant seemed upset while staying with him but did not appear to be evading the law. Instead, Pitre ascribed the behavior to the fact that defendant's wife had left him and he had lost his job. His actions, therefore, seem as consistent with innocent behavior as with criminal conduct. As we have stated in the past, conduct giving rise to the decision to arrest an individual must be more consistent with criminal activity than with innocent behavior. State v. Peebles, 376 So.2d 149 (La.1979); State v. Mendoza, 376 So.2d 139 (La.1979).
Upon reconsideration of the issue of probable cause to arrest defendant in light of the entire record, and particularly the second hearing on the motion to suppress, we find no more showing than before that there existed probable cause for defendant's arrest.
Our decision finds further support in the fact that the victim's young son told the police that "Agnes" had been hurting his mother. Lt. Smith who was in charge of the investigation and made the decision to arrest defendant testified that he had no information tying the name "Agnes" to defendant, but did know that one of the Richards brothers was called "Agnes." Having difficulty interviewing the child, the police did not pursue this information, nor did they attempt to have the child interviewed by someone skilled in such interviews.
*1288 Having found that the police did not have probable cause to arrest defendant, we must examine the circumstances surrounding his confession to determine whether the confession, which in our earlier decision we upheld against an attack that it was involuntary, is sufficiently attenuated from the illegal arrest to render it admissible notwithstanding the prior illegal arrest. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 824 (1979); Brown v. Illinois, supra; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 441 (1963). When we consider attenuation under Brown, we examine the record for Miranda warnings, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrance of the official misconduct.
As concerns defendant's confession, the case for attenuation is difficult to build, considering the totality of the evidence before us. Defendant was arrested at 9:39 p. m. on October 20, 1975. After being advised of his rights, defendant was interrogated from 10:00 p. m. until approximately 1:30 a. m. the next morning. Toward the end of this interrogation, defendant, complaining to the officers that he was tired and had a headache, confessed to the offense, but was unable to relate any details. Due to the accused's inability to relate any details of the offense, the officers agreed to allow defendant to get some rest. Defendant was formally booked and then brought to the parish prison at about 3:00 a. m. Defendant claims that he was moved to the "hole" at about 5:30 a. m. After sleeping only briefly, defendant was awakened shortly after 7:00 a. m. A formal statement in which defendant admitted the offense and supplied the details omitted from the earlier oral confession began around 7:30 a. m. and concluded less than one hour later. Defendant signed this statement, but claims that he thought it was a doctor's release. Defendant was taken to a doctor immediately thereafter.[2]
On this record, the temporal proximity of the arrest and the confession are very close. Defendant was interrogated almost continuously from the moment of his arrest until the oral confession. This questioning proceeded despite the officers' knowledge of defendant's poor physical condition. The written confession, little more than a formality once defendant confessed orally, followed a very brief break in the interrogation.
It is apparent that when defendant failed to appear for the voice analyzer examination, the officers simply decided that he was guilty of the offense and halted any other investigation.[3] Once Scott was arrested, the police abandoned the plan to use a voice analyzer examination in favor of intensive police questioning. Under these circumstances, there was not a sufficient break in causality between the arrest and the confession to purge the latter of the initial taint.
Accordingly, we hold that the police did not have probable cause to arrest defendant and that his confession is not sufficiently attenuated from the illegal arrest to render it admissible.[4]

Decree
For the reasons expressed above, we reverse defendant's conviction and sentence and remand the case to the trial court for further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED.
*1289 MARCUS, J., dissents.
WATSON, J., concurs and is of the opinion that the case should not have been remanded originally.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The question of probable cause to arrest is a very close one. Defendant was seen in the vicinity of the victim's apartment around the time of the murder (early morning hours on Thursday). He and another man discovered the body. He did not show up for work on Thursday or Friday. He did not appear at the police station as scheduled for further investigatory questioning and testing on Friday, at which time the four other principal suspects had been cleared. He could not be found at home. Curtis Richard told the police defendant "acted strange at Ann Melancon's apartment" after the homicide. Defendant's automobile was found at a closed store on Sunday. The store manager told police defendant had been with a store employee on Saturday, and that employee told police defendant was at his apartment acting strangely.
Nevertheless, even if probable cause to arrest was not established, the arrest was not purposefully illegal. I would therefore find attenuation, and since the confession was detailed and reliable and was proved to be voluntary, the confession was properly admitted.
I would affirm the conviction.
NOTES
[1] Our earlier opinion in this case sets forth the factual background of defendant's arrest including the reasons why he and others were considered suspects. State v. Scott, supra.
[2] State witnesses denied that defendant had ever asked for a doctor. However, a parish prison trustee stated that defendant appeared very tired when taken from his cell earlier on the morning of the 21st and that he had requested a doctor at that time.
[3] Note that Curtis Richards appeared a particularly likely suspect as of this time. Not only had Richards discovered the body initially, but the victim's child, who was found asleep beside the deceased's body, told police that Uncle Agnes (Richards) was hurting her mother. Also, the police were aware that Richards had a criminal record.
[4] Because we again find that the state failed to establish probable cause for the arrest, we pretermit consideration of defendant's argument that allowing a second, full-scale hearing on the motion to suppress exposes him to double jeopardy.