729 So.2d 1019 (1999)
STATE of Louisiana
v.
Aristide LANDRY and Raymond Scardino.
No. 98-KK-0188.
Supreme Court of Louisiana.
January 20, 1999.
*1020 Richard Phillip Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., David Kirk Groome, Jr., Metairie, John Jerry Glas, New Orleans, for Applicant.
Perman Glenn, III, Donald Anthony Sauviac, Jr., David Craig, Clive Adrian Stafford Smith, New Orleans, for Respondent.
PER CURIAM:[*]
Resolving a credibility choice between state and defense witnesses with regard to the circumstances under which both defendants accompanied police officers from their residence to the Homicide Division of the New Orleans Police Department, where they gave videotaped statements at issue here concerning the death of Lester Hansen, the trial court found that the police had arrested the defendants in their home without arrest warrants in violation of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The court further ruled that "[e]verything that happened thereafter was fruits of the poisonous tree, and thus should be suppressed." The court of appeal found "no error in the trial court's ruling." State v. Scardino, 97-2582 (La.App. 4th Cir.12/18/97). We granted the state's application not to review the exercise of the trial court's factfinding discretion but to consider its ruling in light of New York v. Harris, 495 U.S. 14, 21, 110 S.Ct. 1640, 1644-45, 109 L.Ed.2d 13 (1990), which held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton." See also State v. Galliano, 96-1736, pp. 13-14 (La.App. 1st Cir.6/20/97), 696 So.2d 1043, 1051. The trial court apparently concluded that the inquiry into the probable cause basis for arresting the defendants had been foreclosed not only by the Payton violation but also by the opinion of the lead investigating officer, Detective Dwight Deal, expressed in response to a direct question from the court during the suppression hearing, that he did not have probable cause to arrest the defendants at the time he went to their residence because the officer "didn't have everything that I wanted to have to satisfy myself." Detective Deal therefore did not apply to a magistrate for arrest warrants because he "wanted to build this and make it a stronger case."
We have made clear that "the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action." State v. Kalie, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880 (emphasis in original) (citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and State v. Wilkens, 364 So.2d 934, 937 (La.1978)). Detective Deal's opinion about the status of his investigation, or his desire to obtain more information before applying to the magistrate for arrest warrants, therefore did not preclude the trial court from inquiring into the probable cause basis for Deal's actions, once it found that the detective had, in fact, arrested the defendants in their home. See Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966) ("The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too *1021 soon.... Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."); cf., State v. Rodrigue, 437 So.2d 830, 833, n. 5 (La.1983) ("[T]hat a better showing of probable cause could have been made, if the officers seeking the warrant had waited for the development of available information does not detract from the showing of probable cause that was made.").
In its application, the state has provided this Court with information which it contends supplied the probable cause basis for taking the defendants into custody before they gave their videotaped statements. Deal testified at the hearing that he had interviewed Benjamin Scardino, the brother of Raymond Scardino and cousin of Aristide Landry, approximately 12 hours before he led a team of officers to the defendants' home. In that statement, Benjamin Scardino told the detective that shortly after Hansen's murder the defendants confided to him that they had gone to Hansen's home in Lake Catherine, Louisiana, on the day of the crime with Ricky Alford and eventually helped Alford tie the victim up and beat him, apparently in an effort to make Hansen confess to abusing Alford's children sexually. Alford then took a large knife, slit the victim's throat so viciously that Hansen's head hung only by the flesh at the back of his neck, and stabbed him in the back with enough force to sever Hansen's ribs and penetrate one of his lungs. The defendants and Alford wrapped the victim's body in a sail from his sailboat, put the body in a car they had borrowed earlier that day, and disposed of the body, weighted by a large brick tied to its feet, in some water, possibly a canal, "near the Interstate."
According to the state, details of the stabbing provided in Benjamin Scardino's account matched the results of the autopsy on Hansen after his nearly decapitated body, wrapped in a sail and bound hand and foot and weighted, was recovered from Bayou Sauvage half a mile from U.S. 90 in Lake Catherine. Those details, the state argues, vouched for the reliability of his information, as did the way in which Benjamin Scardino acquired the information. See Spinelli v. United States, 393 U.S. 410, 425, 89 S.Ct. 584, 593, 21 L.Ed.2d 637 (1969) (White, J., concurring) ("[I]f, for example, the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient."). The state also argues that Benjamin Scardino's familial relationship with the defendants further vouched for the reliability of his information. See 2 W.R. Lafave, Search and Seizure, § 3.3(c), pp. 136-37 (West 1996) ("[T]here may be circumstances in which the informant's implication of someone whom he could be expected to protect will sufficiently show the reliability of his information.").
It appears, however, that the state failed to introduce any of this information pertinent to the question of probable cause at the suppression hearing. The trial judge therefore could not have ruled on the question even if it had been so inclined. In fact, the court sustained the state's objections when defense counsel sought to question Detective Deal about Benjamin Scardino's statement, thereby foreclosing any inquiry into the factual basis for Deal's suspicions that the defendants had been involved in Hansen's murder. Under these circumstances, in which the trial court misapplied derivative taint analysis to a Payton violation possessing no causal relationship to the subsequent stationhouse statements, Harris, 495 U.S. at 19, 110 S.Ct. at 1644, a remand to the district court for retrial of the motion to suppress as to the issue of probable cause is appropriate. See State v. Jackson, 424 So.2d 997, 1000 (La.1983) (remanding for retrial of the motion to suppress to provide the state with an opportunity to carry its burden "of establishing the admissibility of the defendant's confession by either showing that probable cause existed to arrest the defendant or that the causal connection between an unlawful arrest and a subsequent confession had been broken for Fourth Amendment purposes."); State v. Simmons, 328 So.2d 149 (La.1976) (remand for retrial of motion to suppress as opposed to reversal of the defendant's conviction is appropriate when the state has failed *1022 to carry its burden of rebutting the defendant's specific allegations of coercion leading to his confession); State v. Haynie, 395 So.2d 669 (La.1981) (applying Simmons in a pretrial context); see also United States v. Little, 18 F.3d 1499, 1503 (10th Cir.1994) (even when the result on a motion to suppress is favorable to the defendant, "[i]f the district court's factual findings are based on an erroneous interpretation of law, a remand is appropriate unless the record is such that only one resolution of the factual issue is possible.") (internal quotation marks and citations omitted), appeal after remand, 60 F.3d 708 (10th Cir.1995). The state may thereby have the opportunity to show, if it can, that Detective Deal had probable cause for taking the defendants into lawful custody before they gave their statements. In making that determination, the court may consider all of the information known collectively to the law enforcement personnel involved in the investigation. See United States v. Klein, 93 F.3d 698, 701 (10th Cir.1996) ("Probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest.") (citation and internal quotation marks omitted); United States v. Butler, 74 F.3d 916, 921 (9th Cir.1996) ("Probable cause can also be demonstrated through the collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer."); see also Rodrigue, 437 So.2d at 833, n. 5. If the trial court finds that probable cause existed, it must then consider the defendants' claims that the police physically abused them in the Homicide Division and thereby rendered their subsequent statements involuntary. See Harris, 495 U.S. at 20, 110 S.Ct. at 1644 ("Statements taken during legal custody would of course be inadmissible, for example, if they were the product of coercion, if Miranda warnings were not given, or if there was a violation of the rule of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)").
JUDGMENT VACATED; CASE REMANDED.
LEMMON, J., dissents and assigns reasons.
LEMMON, J., Dissenting.
The trial court made a factual finding that defendants had been arrested in their home without a warrant in violation of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and suppressed videotaped statements, subsequently made by defendants at the police station, as the product of an illegal arrest. We granted certiorari to review that ruling because of a statement attached to the state's application in which defendant Scardinos's brother appeared to provide a probable cause basis for the warrantless arrest.[1] We thus intended to review the trial court's suppression ruling in light of New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), which held that the exclusionary rule does not bar the state's use of a statement made by the defendant outside of his home, even though the statement was taken after an arrest in the home in violation of Payton, when the police had probable cause to make the warrantless arrest of defendant in his home.
After granting the state's application and reviewing the record, we determined that the state at the suppression hearing failed to introduce Benjamin Scardino's statement or other critical information bearing on probable cause to arrest defendants in their home. Without a showing of probable cause, the state could not have relied on the Harris holding as a basis for using defendants' statements made at the police station after the warrantless arrest in their home.[2] Thus the *1023 trial court's suppression ruling appears to be correct on the record evidence introduced at the suppression hearing. The critical issue, therefore, is whether we should remand the case for a reopened hearing on the motion to suppress and thereby provide the state with a second opportunity to introduce probable cause evidence that was available to and in the possession of the state at the time of the first hearing. I disagree with the majority's remanding the case under these circumstances.
This court has previously ordered reopened hearings on motions to suppress under limited circumstances. In State v. Jackson, 424 So.2d 997 (La.1983), the trial judge denied a motion to suppress both a purse seized during the defendant's arrest and statements made by the defendant after his arrest. During the hearing that led to this ruling, the judge sustained the state's objection to defense counsel's cross-examination of witnesses pertaining to probable cause for the defendant's arrest. At trial, the state introduced the confession and the purse, and the defendant was convicted.
On appeal, this court, after ruling that the trial judge erred in restricting defense counsel's cross-examination pertaining to probable cause to arrest, was unable in light of the trial error to determine whether the state carried its burden of establishing the admissibility of the confession. Rather than reversing the conviction, however, this court remanded "the motion for a reopened hearing to admit the omitted or improperly excluded evidence." Id. at 1000. This court noted that the error may be eliminated by a reopened hearing on the motion to suppress at which the trial court, after considering the excluded cross-examination, may determine that the motion to suppress still must be denied, and a new trial on the merits possibly may be avoided. Id. See also State v. Edwards, 375 So.2d 1365 (La.1979) (possibly avoiding new trial after conviction by remanding for a reopened suppression hearing when the trial court at first suppression hearing erroneously denied defendant's motion to suppress by granting state's objections when the defendant attempted to explore issue of lack of probable cause).
Unlike the Jackson and Edwards cases, the trial court in the present case granted the motion to suppress, and the state is the party complaining to this court of the trial court's ruling. However, the state's complaint (unlike defense counsel's complaint in the Jackson and Edwards cases) is not that the trial court improperly excluded evidence offered by the complaining party or limited in any manner the complaining party's examination or cross-examination of any witnesses.[3] Nor does the state assert in this court that it has newly discovered evidence of probable cause that was not known or reasonably knowable at the time of the suppression hearing. In fact, the state, as noted earlier, had in its possession significant evidence of probable cause that it simply failed to offer in evidence.
I agree with the rationale of Jackson and Edwards cases, which was designed to avoid a new trial on the merits when a reopened suppression hearing might show that correction of a trial error in improperly admitting or excluding evidence at the original hearing would not change the original suppression ruling. That rationale, however, has no application in the present case. The decision unfavorable to the state at the motion to suppress did not result from erroneous evidentiary rulings by the trial court, but rather resulted from the state's unexplained failure to argue the New York v. Harris exception to the Payton violation and the state's further failure to introduce available evidence on probable cause which would support a New York v. Harris argument in this court. The state has further failed to advance any convincing argument that it should be given a second chance to remedy the prior failings. Under the circumstances, it is inappropriate for this court not only to supply a legal argument overlooked by the state, but also to provide the state a second opportunity to *1024 meet its burden of proof when the necessary evidence was in its possession at the time of the original hearing.[4]
NOTES
[*] Kimball, J., not on panel. See La.S.Ct. Rule IV, Part II, § 3.
[1] The statement by Benjamin Scardino was given twelve hours before defendants' arrest in their home. In the statement, Benjamin Scardino related information, confided to him by defendants, that they helped Ricky Alford tie the victim up and beat him; that Alford nearly decapitated the victim with a large knife and forcefully stabbed him; and that defendants and Alford wrapped the body in a sail from Alford's sailboat and transported the weighted body to a roadside canal, where it was dumped. The details given by Benjamin Scardino matched those in the autopsy report and in the police report of the recovery of the body.
[2] The state did not urge Harris in the trial court (or in its application to this court) as a basis for denial of the motion to suppress. Indeed, the state at the hearing objected to defense counsel's attempt to question the detective about Benjamin Scardino's statement.
[3] The state's sole complaint was that the trial court erred in finding that defendants had been arrested rather than that they freely consented to go to the police station and give statements.
[4] I concede that this court has previously granted this type of favorable treatment to the state. See State v. Scott, 355 So.2d 231 (La.1978) (possibly avoiding new trial after conviction by remanding for a reopened suppression hearing; prosecution at first suppression hearing failed to fully establish either probable cause or break in causal connection between arrest and confession); State v. Hills, 354 So.2d 186 (La.1977) (same; prosecution at first suppression hearing failed to rebut evidence of coerced confession); State v. Simmons, 328 So.2d 149 (La.1976) (same; holding that prosecution had burden at first suppression hearing of rebutting each of defendant's coercion claims).