BROWN, Chief Judge.
 

 |! Defendant, James Sinclair, a passenger in a vehicle stopped for a traffic violation, was formally charged by bill of information with possession of marijuana, second offense, in violation of La. R.S. 40:966(E)(2). Defendant filed a motion seeking to suppress all evidence obtained in connection with his arrest.
 

 At the hearing on the motion to suppress, William Jackson, the arresting officer, was the only witness. Officer Jackson testified that on August 28, 2010, at approximately 3:00 a.m., he initiated a traffic stop on Ransom Street in Arcadia, Louisiana. Officer Jackson stated that he observed the following: ‘Well, [the car] come out of Mooreland Street and he actually run in the ditch which brought my attention to him. And he swerved the car a couple of times.... I asked [the driver] why he was swerving and he stated that he was running out of gas.” Officer Jackson stated that once he approached the vehicle, he noticed that the passenger, James Sinclair, was “acting a little fidgety” and suspicious. Unaware of whether Sinclair had a weapon, Officer Jackson asked Sinclair to step out of the vehicle. Officer Jackson then conducted a pat-down of Sinclair. Although he did not find any weapons, Officer Jackson felt a bag in Sinclair’s pocket which he believed to contain marijuana. When questioned by Officer Jackson, Sinclair stated that he had “a bag of weed” in his pocket. Thereafter, Officer Jackson retrieved the marijuana from Sinclair’s pocket. Sinclair now claims that this search and seizure was unlawful.
 

 
 *450
 
 Officer Jackson wrote two reports. In neither written report did Officer Jackson state that the car swerved; he did write that the vehicle did |2not have a license plate. However, both reports state that Officer Jackson first saw the Honda Accord when it “backed from Mooreland St. onto Ransom St.” Officer Jackson at trial added that after the vehicle backed up, it proceeded and almost went into the ditch and swerved.
 

 The trial court denied defendant’s motion to suppress without reasons. Following the denial, defendant entered a
 
 Crosby
 
 plea to possession of marijuana. In
 
 State v. Crosby,
 
 388 So.2d 584 (La.1976), the supreme court held that a defendant may be allowed appellate review if, at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case and where the trial court accepted the plea of guilty so conditioned (which the court has discretion to refuse). In accordance with an agreement, defendant was sentenced to one year in the parish jail with credit for time served. He now appeals the trial court’s denial of the motion to suppress.
 

 Discussion
 

 In
 
 Arizona v. Johnson,
 
 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), a passenger in a traffic stop setting moved to suppress evidence obtained through a pat-down search. In its unanimous decision, the U.S. Supreme Court reversed the Arizona Supreme Court’s suppression of the evidence, stating:
 

 For the duration of a traffic stop, we recently confirmed, a police officer effectively seizes “everyone in the vehicle,” the driver and all passengers.
 
 Brendlin v. California,
 
 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Accordingly, we hold that, in a traffic-stop setting, the first
 
 (Terry v.
 
 Ohio) condition — a lawful investigatory stop — is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not | shave, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.
 
 [1]
 

 555 U.S. at 327, 129 S.Ct. at 784.
 

 |4In the present ease, defendant argues that both the traffic stop and pat-down
 
 *451
 
 were unlawful. First, the defense argues that Officer Jackson did not provide a credible explanation for the reason he stopped the vehicle, and without a credible basis for the stop, it was unlawful. The defense points out that Officer Jackson’s arrest report stated that he stopped the vehicle because it did not have a license plate, while at the hearing he testified the reason for the stop was because the vehicle ran into a ditch and swerved. The defense also argues that the subsequent pat-down was unlawful because Officer Jackson did not articulate any legitimate reasons for conducting the pat-down. The defense argues that Officer Jackson’s reasoning that the defendant was “fidgety” was not enough to justify the pat-down, that is, a reasonable belief that defendant was armed and dangerous. Therefore, the defense contends since the traffic stop and pat-down were unlawful, any evidence seized as a result thereof should be suppressed.
 

 Most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in
 
 Terry v. Ohio.
 

 [2]
 

 Berkemer v. McCarty,
 
 468 U.S. 420, 104 S.Ct. 8138, 82 L.Ed.2d 317 (1984). Furthermore, traffic stops are “especially fraught with danger to police officers.”
 
 Michigan v. Long,
 
 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The risk of harm to both the police and the occupants of the stopped vehicle is minimized if the officers routinely exercise unquestioned command of the situation.
 
 Maryland v. Wilson,
 
 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).
 

 |sIn
 
 Arizona v. Johnson, supra,
 
 the U.S. Supreme Court noted that three decisions cumulatively portray
 
 Terry’s
 
 application in a traffic-stop setting:
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam);
 
 Maryland v. Wilson, supra;
 
 and
 
 Brendlin v. California, supra.
 
 In these three eases, the Supreme Court, in dictum, stated that officers who conduct “routine traffic stop[s]” may “perform a ‘pat-down’ of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.”
 
 Arizona v. Johnson, supra.
 
 The Court stated “[t]hat forecast, we now
 
 *452
 
 confirm, accurately captures the combined thrust of the Court’s decisions in
 
 Mimms, Wilson,
 
 and
 
 Brendlin.” Arizona v. Johnson,
 
 129 S.Ct. at 787.
 

 A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and they inform the driver and passengers they are free to leave.
 
 Brendlin v. California, supra.
 
 An officer’s inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.
 
 Arizona v. Johnson, supra.
 

 For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of legal violation, such as a traffic violation, occurred or is about to occur before stopping the vehicle.
 
 Whren v. United States,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer.
 
 State v. Huntley,
 
 97-0965 (La.03/13/98), 708 So.2d 1048. The determination of reasonable suspicion for an investigatory stop, or probable cause for arrest, does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action.
 
 State v. Landry,
 
 98-0188 (La.01/20/99), 729 So.2d 1019;
 
 State v. Arnold,
 
 34,194 (La.App.2d Cir.12/06/00), 779 So.2d 840. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer’s intent.
 
 Whren v. United States, supra.
 

 In
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court addressed whether non-threatening contraband detected through the sense of touch during a
 
 Terry
 
 pat-down may be admitted into evidence. Analogizing to the “plain view” doctrine, which provides that if police are lawfully in a position to view an object and its incriminating character is immediately apparent they may seize it without a warrant,
 
 see Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the
 
 Dickerson
 
 Court held that when a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the |7officer’s search for weapons, and its warrantless seizure is justified by the same practical considerations that inhere in the plain view context.
 
 Minnesota v. Dickerson, supra.
 

 Great weight is placed upon the trial court’s ruling on a motion to suppress, in regard to the finding of facts, because it had the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v. Jackson,
 
 26,138 (La.App.2d Cir.08/17/94), 641 So.2d 1081. Accordingly, appellate courts review a district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a
 
 de novo
 
 review to its findings of law.
 
 State v. Hemphill,
 
 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263,
 
 writ denied,
 
 06-2976 (La.03/09/07), 949 So.2d 441.
 

 In this case, the evidence adduced at the hearing on the motion to suppress
 
 *453
 
 supports the trial court’s denial of defendant’s motion to suppress. Officer Jackson testified that he initiated a traffic stop because he noticed a car backing down one street and turning onto another, before almost running into a ditch and swerving. Although the officer’s reports state that his initial reason to initiate the stop was that it was his belief that the car lacked a license plate, either reason would have been enough to initiate a traffic stop. We note that Officer Jackson on cross-examination stated that he initially did not see a license plate but did see the plate after the stop. Both the United States and Louisiana Supreme Courts have held that officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous | ^substances.
 
 Whren v. United States, supra; State v. Kalie,
 
 96-2650 (La.09/19/97), 699 So.2d 879. Further, regardless of any perceived inconsistencies by the defense, it was within the trial court’s discretion to make factual determinations based upon Officer Jackson’s credibility, and its determination should not be disturbed on appeal absent a showing of an abuse of discretion. Based upon Officer Jackson’s observation of a traffic violation, he was justified in initiating a traffic stop.
 

 Once Officer Jackson approached the vehicle, he noticed that defendant, a passenger in the vehicle, was fidgety and looked suspicious. Thus, following his instinct and in the interest of officer safety, he executed a weapons search. As Officer Jackson conducted the pat-down, he felt what he believed to be a bag of marijuana. Additionally, Officer Jackson testified that the defendant confirmed that he had marijuana in his pocket. Applying the “plain-feel” doctrine, the seizure of the marijuana was valid and lawful.
 
 See Minnesota v. Dickerson, supra.
 

 The traffic stop and subsequent search and seizure were valid and lawful. Therefore, the trial court correctly denied the motion to suppress.
 

 In his
 
 pro se
 
 brief, defendant states that the police video dash cam was neither subpoenaed nor introduced into evidence. Defendant argues that since technology allows traffic stops to be recorded, police officers should be required to submit the video footage into evidence. Defendant goes further to request that this Court not consider an officer’s testimony that is not corroborated by video surveillance.
 

 | aThis was a hearing in the trial court on the motion to suppress. Only Officer Jackson testified and nothing was asked or said about whether there was such a video or even a camera in the police cruiser.
 
 [3]
 
 No objection on this ground was made nor was there any request for a video. There is nothing in the record concerning the existence of a video dash camera.
 

 We also note that the only challenge to Officer Jackson’s testimony was that he did not write in his police report that the vehicle swerved. The state had the burden to prove an exception to the warrant requirement. An officer’s testimony alone, if believed, is sufficient to prove a fact.
 
 State v. Willis,
 
 36,759 (La.App.2d Cir.04/09/03), 843 So.2d 592.
 

 Conclusion
 

 For the foregoing reasons, defendant’s conviction and sentence are affirmed.
 

 [1]
 

 . The facts of the case as stated in the Court’s opinion are:
 

 On April 19, 2002, Officer Maria Trevizo and Detectives Machado and Gittings, all members of Arizona’s gang task force, were on patrol in Tucson near a neighborhood associated with the Crips gang. At approximately 9 p.m., the officers pulled over an automobile after a license plate check revealed that the vehicle’s registration had been suspended for an insurance-related violation. Under Arizona law, the violation for which the vehicle was stopped constituted a civil infraction warranting a citation. At the time of the stop, the vehicle had three occupants' — the driver, a front-seat passenger, and a passenger in the- back seat, Lemon Montrea Johnson, the respondent here. In making the stop the officers had no reason to suspect anyone in the vehicle of criminal activity.
 

 The three officers left their patrol car and approached the stopped vehicle. Machado instructed all of the occupants to keep their hands visible. He asked whether there were any weapons in the vehicle; all responded no. Machado then directed the driver to get out of the car. Gittings dealt with the front-seat passenger, who stayed in the vehicle throughout the stop. While Ma-chado was getting the driver’s license and information about the vehicle’s registration and insurance, Trevizo attended to Johnson.
 

 
 *451
 
 Trevizo noticed that, as the police approached, Johnson looked back and kept his eyes on the officers. When she drew near, she observed that Johnson was wearing clothing, including a blue bandana, that she considered consistent with Crips membership. She also noticed a scanner in Johnson's jacket pocket, which "struck [her] as highly unusual and cause [for] concern,” because "most people” would not carry around a scanner that way “unless they’re going to be involved in some kind of criminal activity or [are] going to try to evade the police by listening to the scanner.” In response to Trevizo’s questions, Johnson provided his name and date of birth but said he had no identification with him. He volunteered that he was from Eloy, Arizona, a place Trevizo knew was home to a Crips gang. Johnson further told Trevizo that he had served time in prison for burglary and had been out for about a year.
 

 Trevizo wanted to question Johnson away from the front-seat passenger to gain "intelligence about the gang [Johnson] might be in.” For that reason, she asked him to get out of the car. Johnson complied. Based on Trevizo's observations and Johnson’s answers to her questions while he was still seated in the car, Trevizo suspected that "he might have a weapon on him.” When he exited the vehicle, she therefore "patted him down for officer safety.” During the pat-down, Trevizo felt the butt of a gun near Johnson's waist. At that point Johnson began to struggle, and Trevizo placed him in handcuffs.
 

 Johnson was charged in state court with, inter alia, possession of a weapon by a prohibited possessor.
 

 [2]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [3]
 

 . Officer Jackson testified that one other officer arrived on the scene "before (defendant) stepped out of the vehicle.”