LOLLEY, J.
hDerek Dewayne Harris was charged with possession of more than 28 but less than 200 grams of cocaine, a violation of La. R.S. 40:967(F); battery of a police officer, a violation of La. R.S. 14:34.2; and, possession of marijuana with intent to distribute, a violation of La. R.S. 40:966(A)(1). Following the denial of his motion to suppress, the defendant pled guilty to these charges, reserving his right to appeal the denial of his motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced the defendant to serve agreed-upon sentences of 25 years at hard labor, five without parole, for the cocaine conviction; five years at hard labor for the battery conviction; and, 25 years at hard labor for the marijuana conviction, all to run concurrently, plus the minimum fines and default time, and Harris appealed. For the reasons that follow, we amend the sentences to delete the imposition of jail time in the event of the defendant’s default on the payment of fines and affirm the convictions and sentences as amended.
Facts
On February 2, 2009, after being arrested by Shreveport police, Harris was charged by bill of information with possession of more than 28 but less than 200 grams of cocaine, a violation of La. R.S. 40:967(F); battery of a police officer, a violation of La. R.S. 14:34.2; and, possession of marijuana with intent to distribute, a violation of La. R.S. 40:966(A)(1). That same day, the defendant appeared with counsel, waived formal arraignment, and pled not guilty to these charges. Thereafter, the defendant filed a motion to suppress the evidence of cocaine and marijuana which he alleged was seized as the result of an illegal pat-down search. Subsequently, the trial court held Ran eviden-tiary hearing on the defendant’s motion to suppress whereby the following evidence was adduced.
On December 15, 2008, Shreveport Police Sergeant W.W. Lindsey, Jr., was working a special detail in Shreveport, Louisiana, known as “Operation Camp Out,” designed to reduce crime rates in certain high-crime areas. This area in particular was targeted due to a high volume of vehicle burglaries, narcotics, speeding vehicles, arrests, and other illegal activity. At approximately 10:30 p.m., Off. Lindsey was driving eastbound on DeSoto Street when he approached a blue Chevrolet Tahoe traveling in the opposite direction. Officer Lindsey did not see a visible license plate on the SUV, so he turned around, activated his emergency lights, and effected a traffic stop. That *1229 action triggered the patrol car’s dash camera and the subsequent events were recorded.
The driver of the SUV, later identified as Derek Dewayne Harris, continued through the intersection and pulled over onto the shoulder of the road. When Off. Lindsey pulled in behind the SUV, he activated the patrol car’s spotlight and saw that the SUV had a temporary license tag taped on the inside of the dark-tinted rear window. Officer Lindsey then asked the defendant to get out of the vehicle; the defendant complied and approached Off. Lindsey’s patrol car. Officer Lindsey called for backup, got out of the patrol car, and began speaking with the defendant.
The defendant told Off. Lindsey that he had just bought the vehicle and said that the temporary tag was expired because the dealership made a mistake and wrote down the wrong date. At this time, Off. Lindsey observed two additional passengers in the SUV and that the defendant “was | Rooking around left, right, just looking.” Due to these circumstances, as well as being in a high-crime area, Off. Lindsey decided to wait until backup arrived before conducting a pat down of the defendant to ensure he was unarmed.
When Off. Lindsey saw that the backup officer was arriving on scene, he asked the defendant if he had any weapons, which the defendant denied, and Off. Lindsey instructed the defendant to put his hands on the front bumper of the patrol car so he could pat him down for officer safety. As Off. Lindsey began the pat down, he felt a bulge in the defendant’s right front pant’s pocket which he suspected was narcotics. At approximately that same time, the backup officer got out of his patrol car and the defendant broke away from Off. Lindsey and fled on foot.
The defendant tripped and fell about ten feet away. Officer Lindsey also fell to the ground, which resulted in a struggle between the two men. Officer Lindsey stated that the defendant was “fighting to the utmost” and that the defendant hit him in the face. Moreover, Off. Lindsey stated that some plastic baggies containing narcotics fell out of the defendant’s pants during the struggle. Ultimately, the officers were able to subdue and arrest the defendant, and the search incident to arrest revealed that the defendant had 65 grams of cocaine, 11 individually wrapped crack rocks, and ten grams of marijuana on his person.
After being charged with the drug and battery offenses, the defendant filed a motion to suppress, urging that the evidence was the fruit of an illegal search. More specifically, he argued that Off. Lindsey could not have reasonably feared for his safety giving rise to a pat down search and there |4was no “authority to reach into his coat pocket to retrieve a bag [too] small to contain a firearm or other weapon that may be dangerous to the officer.” The defendant also makes the argument that Off. Lindsey reached into his jacket pocket and seized the contraband during the pat-down search.
The trial court, disagreed and denied the defendant’s motion to suppress. The trial court first found that Off. Lindsey had justification for the traffic stop because the vehicle’s license plate was not visible and, second, that Off. Lindsey acted reasonably when he decided to pat down the defendant for weapons due to the fact that there were two additional persons in the car and that this was a high-crime area. The trial court also found that the subsequent discovery of the drugs during the arrest was legal. As to whether Off. Lindsey reached into the defendant’s jacket pocket and seized the drugs, the judge stated that despite viewing the video five times, he could not see whether the officer reached *1230 into a pocket and further stated that “it doesn’t appear that he actually took anything out of the [jacket] pocket and I can’t tell really from the video whether he stuck his hand in there or not.”
After the defendant pled guilty and was sentenced, he failed to timely file an appeal. However, the defendant ultimately obtained an out-of-time appeal through post-conviction relief, and this appeal now follows.
Discussion
As the defendant’s sole assignment of error, he argues that the trial court erred in denying his motion to suppress the evidence of cocaine and marijuana. According to the defendant, Off. Lindsey did not have reasonable suspicion to justify a pat-down search for weapons following the | ^initial traffic stop. We disagree.
When the legality of a search or seizure is placed at issue by a motion to suppress evidence, the state bears the burden of proving the admissibility of the evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court’s denial of a motion to suppress is afforded great weight and its ruling will not be set aside unless there is an abuse of discretion. State v. Wells, 2008-2262 (La.07/06/10), 45 So.3d 577. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. Wells, supra; State v. Hunt, 2009-1589 (La.12/01/09), 25 So.3d 746.
Before we determine whether the trial court erred in its decision to deny the defendant’s motion to suppress, we note that the dash cam video recording of the incident was not included in the record on appeal. Apparently, because the words “admitted into evidence” were never used at the hearing, the recording was not made a part of the trial record. However, it is clear that the trial court viewed the recording many times in conjunction with its decision to deny the defendant’s motion. Because the defendant is entitled to a review on a complete record, this Court was ultimately able to obtain a copy of the recording and it has been subsequently added into the appellate record for purposes of review. See La. Const. Art. 1 § 19.
The first issue that we must consider is whether Off. Lindsey was justified in conducting the initial traffic stop. The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in | ^criminal activity is recognized in La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of legal violation, such as a traffic violation, occurred or is about to occur before stopping the vehicle. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 1997-0965 (La.03/13/98), 708 So.2d 1048; State v. Sinclair, 46,623 (La.App.2d Cir.08/17/11), 72 So.3d 448. The determination of reasonable suspicion for an investigatory stop, or probable cause for arrest, does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evalúa *1231 tion of all the circumstances known to the officer at the time of the challenged action. State v. Landry, 1998-0188 (La.01/20/99), 729 So.2d 1019; Sinclair, supra. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer’s intent. Whren, supra.
Louisiana motor vehicle law is clear that all vehicles operated on Louisiana highways must display a license plate. See La. R.S. 47:507. Although temporary license plates may be displayed on a rear window, they must nevertheless be “in a clearly visible place and position.” La. R.S. |747:521. At the hearing on the defendant’s motion to suppress, Off. Lindsey testified that when he passed the defendant’s SUV, no license plate whatsoever was visible to him. It was not until after Off. Lindsey activated the patrol car’s spotlight that he was able to see the temporary license tag taped inside the dark-tinted rear window. The video recording from the patrol car’s dash cam supports this testimony. Accordingly, Off. Lindsey’s decision to effect a traffic stop based on a violation of one of these provisions was lawful.
Having upheld the validity of the initial traffic stop, we must next determine whether Off. Lindsey was justified in conducting a pat-down search of the defendant for weapons. Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is authorized to order both the driver and passengers out of the vehicle pending completion of the stop. State v. Evans, 48,489 (La.App.2d Cir.12/04/13), 130 So.3d 406. Further, an officer conducting a traffic stop may perform a pat-down search of a driver and passengers upon reasonable suspicion that they may be armed and dangerous. State v. Cooper, 45,568 (La.App.2d Cir.12/08/10), 55 So.3d 873. Such a search must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Terry, supra. This limited protective search is justified under circumstances where a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Terry, supra; State v. Boyer, 2007-0476, (La.10/16/07), 967 So.2d 458. Reasonable suspicion is more than a hunch, but is instead a “particularized and objective basis for suspecting the person stopped” of |scriminal activity. Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
Louisiana jurisprudence has recognized that there is potential danger for an officer even during a routine traffic stop. Landry, supra. A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle. Landry, supra.
Here, we have identified four factors that Off. Lindsey articulated during his testimony in regards to his decision to conduct a pat-down search of the defendant for officer safety. First, Off. Lindsey testified that instead of remaining stopped at the stop sign, the defendant continued through the intersection and pulled onto the shoulder. Although this is not a crucial factor in our determination, we note that this factor was indeed one that Off. Lindsey specifically referenced when asked to articulate his suspicion that criminal activity was afoot. Second, while speaking with the defendant shortly after he was stopped, Off. Lindsey became aware of two other occupants in the vehicle. This factor seemed to be one of the *1232 biggest concerns for Off. Lindsey. In particular, he testified that it was the exact reason that he waited for the backup officer to arrive: “I waited for my backup to get there in case he had a weapon on him and I had to struggle with him. If I did that without my backup there, then the other two individuals could have got out and it would have been three on one.” Third, Officer Lindsey testified that throughout the encounter, the defendant | aseemed nervous and was “looking around left, right, just looking.” The fourth factor, and one that was also referenced quite frequently during Off. Lindsey’s testimony was that the traffic stop occurred in a high-crime area.
It was for these reasons that Off. Lindsey decided to conduct a pat-down search of the defendant only when a backup officer arrived in order to ensure a balance of force if the encounter became violent. Based upon this record, and given the officer’s testimony about the defendant’s furtive behavior, nervousness, and being outnumbered in a high-crime area, we conclude that Off. Lindsey possessed more than a hunch; he had a reasonable, particularized, and objective basis for suspecting the defendant of additional criminal activity. Accordingly, the defendant’s assignment of error that the pat-down search for weapons following the traffic stop was not based upon reasonable suspicion is without merit.
However, our analysis does not stop here as we need to determine whether the evidence was lawfully seized. As noted above, Off. Lindsey was not able to complete a pat-down frisk for weapons, because during the lawful detention, the defendant attempted to flee, a clear violation of resisting an officer under La. R.S. 14:108. Although Off. Lindsey felt a bulge in the defendant’s front pant’s pocket while conducting the pat down, nothing was seized during that time. Rather, the evidence was seized only after the defendant broke away and then fought with Off. Lindsey before being arrested.
A traditional exception to the warrant requirement is a search incident to a lawful arrest based upon probable cause. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); State v. Surtain, |102009-1835 (La.03/16/10), 31 So.3d 1037. Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense. State v. Parker, 2006-0053 (La.06/16/06), 931 So.2d 353. Here, once the defendant resisted by fleeing from the pat-down search as well as committing a battery upon a police officer, Off. Lindsey had more than enough probable cause to arrest the defendant. Having found the arrest legal, any drugs found on the defendant incidental to his arrest were lawfully obtained.
ErroR Patent
As a final matter, we note that the defendant was sentenced to 60 days in the event of the nonpayment of fines for the drug convictions. However, an indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs, or restitution. State v. Davenport, 43,101 (La.App.2d Cir.03/19/08), 978 So.2d 1189, writ denied, 2008-1211 (La.01/30/09), 999 So.2d 748. A defendant’s claim of indigence in such a situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La.1986); State v. Kerrigan, 27,846 (La.App.2d Cir.04/03/96), 671 So.2d 1242. Where a defendant is represented by the Indigent Defender’s Office, a court-appointed attor *1233 ney, or the Louisiana Appellate Project, this Court has considered it error for a trial court to impose jail time for failure to pay court costs. Kerrigan, supra. In the context of disposition of this claim, this Court may choose to amend the defendant’s sentence. State v. Tillman, 43,569 (La.App.2d Cir.10/22/08), 997 So.2d 144, writ denied, 2008-283611 (La.09/25/09), 18 So.3d 85.
Accordingly, because the defendant was found to be indigent, we conclude that it was error to impose a 60-day sentence for the nonpayment of fines. Defendant’s sentence is therefore amended to delete the portion that provides for a jail term in the event of default on payment of fines.
Conclusion
So considering, the convictions of the defendant, Derek Dewayne Harris, are affirmed and his sentence is hereby amended to delete the imposition of jail time in the event of his default on the payment of fines.
AFFIRMED AND AMENDED; AND AS AMENDED, AFFIRMED.